# ILLINOIS OFFICIAL REPORTS

## Appellate Court

### *People v. Dunlap*, 2011 IL App (4th) 100595

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH TEEN DUNLAP, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0595 |
| Filed | December 20, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's *pro se* postconviction petition alleging that he was denied a fair trial because the prosecutor vouched for the credibility of witnesses and argued facts not in evidence and that his appellate counsel failed to argue on direct appeal that the prosecutor's improper remarks denied him his right to a fair trial was properly dismissed at the first stage of the proceedings as frivolous and patently without merit. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 06-CF-132; the Hon. Scott Drazewski, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Johannah B. Weber and Robert S. Burke, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Appleton and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1 In July 2010, defendant, Joseph Teen Dunlap, *pro se* filed a petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 through 122-7 (West 2010)), claiming that he was denied (1) his right to a fair trial because the prosecutor had vouched for the credibility of witnesses and argued facts not in evidence, and (2) the effective assistance of appellate counsel because his appellate lawyer failed to argue on direct appeal that the prosecutor made improper remarks during his opening statement and closing argument. Later that month, the trial court dismissed defendant's postconviction petition as frivolous and patently without merit.

¶ 2 Defendant appeals, arguing that the trial court erred by dismissing his postconviction petition at the first stage of postconviction proceedings. We disagree and affirm.

¶ 3 I. BACKGROUND

¶ 4 In February 2006, police arrested defendant as he drove away from a known drug house. A subsequent search incident to that arrest revealed four plastic bags containing a total of 11.9 grams of cocaine, $1,922 in cash, and a cellular telephone. In the hour and a half following defendant's arrest, defendant's cellular telephone–which the arresting officer had bagged for evidence–rang "no less than 50 times." The phone's display indicated that 19 of those callers left voice messages.

¶ 5 The State charged defendant, in pertinent part, with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2006)) and unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2006)).

¶ 6 Defendant's May 2007 trial began with the prosecutor outlining for the jury what he intended to show when he presented the State's case. As part of that opening statement, the

prosecutor explained that as jurors, they were entitled to draw certain inferences from the fact that defendant was found with several bags of cocaine and a large amount of cash on his person. The prosecutor described the case as "simple really," given that the evidence would show that defendant was carrying the cocaine and cash because he "hadn't sold out yet." The prosecutor then added, "Clearly, he is somebody we don't want on the streets." The defense offered an immediate objection, which the trial court sustained.

¶ 7 During the State's case in chief, the State presented testimony from police that they arrested defendant as he was leaving a known drug house and that a search incident to that arrest revealed four plastic bags containing a total of 11.9 grams of cocaine, $1,922 in cash, and a cellular telephone. As part of its case, the State showed an audio and video recording of defendant's arrest. The State also presented evidence that (1) in the hour and a half following defendant's arrest, his cellular telephone rang approximately 50 times and (2) the phone's display indicated that 19 callers left voice messages. Defendant did not present evidence in his defense.

¶ 8 The prosecutor then presented his closing argument, part of which included suggested inferences the jury could draw from the evidence. Some of the prosecutor's closing argument, defense counsel's objections to the way the prosecutor characterized the evidence, and the trial court's rulings on those objections, are as follows:

"[PROSECUTOR]: Intent can be proven with circumstantial evidence. You can look to and consider the contents of the events and place to determine what that intent may have been. You are going to be instructed as follows regarding intent: That a person acts with intent to accomplish a result or engage in conduct when his conscious objective or purpose is to accomplish that result or engage in that conduct. It's no coincidence that the [d]efendant is *** coming from a suspected location of drug activity. He is intending to accomplish a result. Think about the money, the nineteen hundred dollars he had on his person. What are these? We would argue to you and submit to you these are the fruits of perhaps a healthy drug sale, perhaps numerous healthy drug sales. In any event, [d]efendant had been–

[DEFENSE COUNSEL]: Objection. He's arguing facts not in evidence.

THE COURT: Overruled. The jury can make its own inference based upon the evidence presented, and those exhibits were admitted into evidence by the [c]ourt.

[PROSECUTOR]: The [d]efendant had money on his person because he was selling drugs. Think about the drugs. He had a baggie containing four smaller amounts of cocaine. That testimony was presented to you in open court. Those [B]aggies were tested by the *** [c]rime [l]ab. He had these because he hadn't sold out yet as I stated in my opening [statement].

And *** think about the cell phone. He's answering the cell phone. He's talking on the cell phone while he's being pulled over. Who was he talking to? Why does he need to be talking to anyone when he's being pulled over, or he's in a car getting pulled over by the police, just as the police are pulling him over. I'll tell you who he's talking to. The people who want the drugs.

[DEFENSE COUNSEL]: Your Honor, I'd like to make a continuing objection.

-3-

THE COURT: All right. Noted. However, it is your determination as opposed to anyone else; that being the fact finders['], as to whether the evidence submitted supports reasonable inferences which are being asked to be made by the State's Attorney at this point in time during his closing argument.

[PROSECUTOR]: Thank you, Your Honor. Telephone calls that [police] testified to that were made on this phone after the [d]efendant was taken into custody and before [police] secured the phone into evidence. Approximately fifteen [*sic*] calls and nineteen voice mail messages in a short period of time. What kind of traffic is that on a phone? The truth is, the man, the [d]efendant, was selling drugs and was caught in the act of having those drugs with intent to sell them. That's what the cell phone activity is all about. And that's the truth about what happened ***. We ask you to find the [d]efendant guilty as charged."

¶ 9 Defense counsel then presented his closing argument, in which he vigorously attacked the State's case as circumstantial and explained that "circumstantial evidence could go toward guilty or could go toward innocent." Counsel also argued that the way police arrested defendant was suspect because (1) the audio recordings were turned off and (2) multiple officers surrounded defendant, moving their hands in and out of his pockets. In addition, counsel argued that (1) the amount of money defendant had on his person was not evidence of guilt because (a) it was Friday, which is traditionally a "pay day" or (b) the money could have been proceeds from a good night at the casino; (2) the testimony about the cellular telephone was not evidence of defendant's guilt because he could have simply been talking to someone when police initiated the traffic stop; and (3) the State's evidence was no more than "innuendo and speculation."

¶ 10 During defense counsel's closing, the prosecutor objected several times, complaining that counsel's arguments were not factual. The trial court responded to the prosecutor's objections by explaining to the jury that (1) "what the attorneys say in final argument is not evidence" and (2) it is "up to the jury to examine and determine whether or not the inference being asked to be drawn is appropriate or not."

¶ 11 In rebuttal, the prosecutor responded to defense counsel's argument regarding the conduct of the arresting officers, as follows:

"I would submit to you that the problems with this audio are up to you to decide whether or not that's sufficient to derail this case ***. It's up to you to decide what the video does or doesn't show. *** There were some very quick questions to [defendant] posed by [police]. This wasn't a Sunday afternoon get[-]together. This was a Friday evening in[-]the[-]dark traffic stop. Sure[,] there were officers present. And on the video it looks like there were more than three or four. But we called three of them to testify. There was no need for us to call four, five, or six officers to testify redundantly or in a duplicative manner. In fact, there's usually an objection when it is done."

¶ 12 Shortly thereafter, the jury convicted defendant of (1) unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2006)) and (2) unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2006)). In July 2007, the trial court sentenced defendant to 13 years in prison.

¶ 13    Defendant filed a notice of appeal, and the trial court appointed the office of the State Appellate Defender (OSAD) to represent him. OSAD filed a direct appeal on defendant's behalf, arguing that the trial court (1) erred by denying defendant's motion to suppress; (2) abused its discretion by denying defendant's motion for a mistrial due to the following alleged errors: (a) violation of the motion *in limine* regarding the introduction of evidence that defendant had an outstanding warrant; (b) elicitation of evidence that defendant requested an attorney after being advised of his *Miranda* rights; and (c) elicitation of evidence that the police officer recognized defendant; and (3) committed plain error by imposing a $1,000 street-value fine absent any evidence of the value of the controlled substances. In March 2009, this court rejected those arguments and affirmed. *People v. Dunlap*, No. 4-07-0959 (May 2, 2009) (unpublished order under Supreme Court Rule 23).

¶ 14    In July 2010, defendant *pro se* filed a postconviction petition, claiming that he was denied (1) his right to a fair trial because the prosecutor had vouched for the credibility of witnesses and argued facts not in evidence, and (2) the effective assistance of appellate counsel because OSAD failed to argue on direct appeal that the prosecutor made improper remarks during his opening statement and closing argument. Later that month, the trial court dismissed defendant's postconviction petition as frivolous and patently without merit.

¶ 15    This appeal followed.


¶ 16                                    II. ANALYSIS

¶ 17    Defendant argues that the trial court erred by dismissing his postconviction petition at the first stage of postconviction proceedings. Defendant contends that he stated the gist of a constitutional claim that he was denied (1) his right to a fair trial because the prosecutor had vouched for the credibility of witnesses and argued facts not in evidence, and (2) the effective assistance of appellate counsel because OSAD failed to argue on direct appeal that the prosecutor's improper remarks denied him his right to a fair trial. We are not persuaded.


¶ 18              A. Postconviction Proceedings and the Standard of Review

¶ 19    This court recently outlined the first stage of postconviction proceedings under the Act, as follows:

    "A defendant may proceed under the Act by alleging that 'in the proceedings which resulted in his or her conviction[,] there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both.' 725 ILCS 5/122-1(a)(1) (West 2006). In noncapital cases, the Act establishes a three-stage process for adjudicating a postconviction petition. 725 ILCS 5/122-1 through 122-8 (West 2006); *People v. Jones*, 213 Ill. 2d 498, 503, 821 N.E.2d 1093, 1096 (2004). At the first stage, 'the trial court, without input from the State, examines the petition *only* to determine if [it alleges] a constitutional deprivation unrebutted by the record, rendering the petition neither frivolous nor patently without merit.' (Emphasis in original.) *People v. Phyfiher*, 361 Ill. App. 3d 881, 883, 838 N.E.2d 181, 184 (2005). 'Section 122-2.1 [of the Act] directs that if the defendant is sentenced to imprisonment (rather than death) and the circuit court determines that the petition is frivolous or patently without merit, it shall be

dismissed in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2004).' *People v. Torres*, 228 Ill. 2d 382, 394, 888 N.E.2d 91, 99-100 (2008)." *People v. Andrews*, 403 Ill. App. 3d 654, 658, 936 N.E.2d 648, 652-53 (2010).

¶ 20　　Our review of a first-stage dismissal is *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184, 923 N.E.2d 748, 754 (2010).

¶ 21　　　　　　　　　　　　B. The Prosecutor's Statements

¶ 22　　　　　　　　　1. *Defendant's Claim That the Prosecutor Made*
*Improper Remarks During Opening Statement*

¶ 23　　Defendant first contends that his constitutional right to a fair trial was violated when the prosecutor made improper remarks during his opening statement. Defendant asserts that the prosecutor tainted the jury when he told the jurors that defendant was carrying the cocaine and cash because he "hadn't sold out yet." Defendant posits that these statements violated his constitutional rights because "[i]t is impermissible for a prosecutor to comment during opening statements upon what testimony will be introduced at trial and then fail to produce that testimony since such an argument is in effect an assertion of the prosecutor's own unsworn testimony in lieu of competent evidence." Defendant further claims that the prosecutor's statement that defendant is "somebody we don't want on the streets" likewise violates his constitutional right to a fair trial because using the pronoun "we" fosters an "us-versus-them" mentality that is inconsistent with the nonpartisan role of the jury. We disagree.

¶ 24　　We understand defendant's contention that the prosecutor's remarks in his opening statements in this case were improper, but we need not resolve this issue because we conclude that those statements did not prejudice defendant. Generally, improper remarks by the prosecutor do not constitute reversible error unless they result in substantial prejudice to the defendant. *People v. Perkins*, 247 Ill. App. 3d 778, 786, 617 N.E.2d 903, 908 (1993). "Any error resulting from the prosecutor's comments is usually cured when the trial court sustains objection or admonishes the jury." *Id.*

¶ 25　　Here, as part of the prosecutor's opening statement, he explained that the jurors were entitled to draw certain inferences from the fact that defendant was found with several bags of cocaine and a large amount of cash on his person. As previously explained, the prosecutor described the case as "simple, really," given that the evidence would show that defendant was carrying the cocaine and cash because he "hadn't sold out yet," and concluded by stating, "Clearly, he is somebody we don't want on the streets." Defense counsel immediately offered an objection, which the trial court sustained. Our review of the record reveals that the court's (1) prompt action in sustaining defense counsel's objection and (2) continuing explanations to the jury about how those statements were just argument cured any potential prejudice that the prosecutor's arguments may have had on defendant's trial.

¶ 26　　　　　　　　　2. *Defendant's Claim That the Prosecutor Made*
*Improper Remarks During Closing Arguments*

¶ 27　　Defendant next contends that his constitutional right to a fair trial was violated when the

prosecutor made improper remarks during his closing argument. First, defendant asserts, as follows:

> "In closing remarks to the jury, the prosecutor stated: 'We would argue to you and submit to you these [packets of money] are the fruits of perhaps a healthy drug sale, perhaps numerous healthy drug sales.' *** There was no evidence presented at trial that a single dollar in [defendant's] possession came from a drug sale. In addition to prejudicing the jury with unsupported claims of drug-dealing, the prosecutor was arguing facts not in evidence. Arguing facts not in evidence to bolster the strength of the State's case constitutes highly improper commentary; it invites the jury to speculate about facts or legal inferences that are unsupported by the record, and plays upon the fears and prejudices of the jury."

Defendant further posits that the prosecutor improperly implied that defendant was using the cellular telephone to sell drugs, as follows:

> "The prosecutor in this case continued to pose and answered a question concerning a telephone conversation [defendant] was having when the police stopped the vehicle in which he was riding: 'Who is he talking to?...I'll tell you who he's talking to. The people who want the drugs.' *** The police has [*sic*] that cellular telephone. The police has [*sic*] the telephone number of the person [with] whom [defendant] was conversing at the time of the traffic stop. The State presented no evidence that the telephone conversation was with 'people' who wanted to buy drugs. By telling the jury that he knew who [defendant] was speaking with, and knew it was 'people' who wanted the 11.9 grams of cocaine in [defendant's] possession, the prosecutor was giving unsworn and prejudicial evidence to the jury. By arguing the [defendant] was actually engaged in arranging the sale of drugs at the time of his arrest–despite the absence of evidence as to anything about the telephone conversation–the prosecutor was inviting the jury to speculate as to that uncharged crime."

Finally, defendant claims that the prosecutor improperly implied that defendant prevented evidence from being presented to the jury, as follows:

> "In the rebuttal portion of his [closing] argument, the prosecutor told the jury: 'There was no need for us to call four, five or six officers to testify redundantly or in a duplicative manner. In fact, there's usually an objection when it is done.' *** To use the rules of evidence as a sword to attack the defense for the State's failure to present evidence is 'utterly improper' and has 'repeatedly [been] held to be reversible error.' *** To argue to the jury that the defense prevented evidence from being presented to the jury is highly improper ***."

We emphatically disagree.

¶ 28    In *People v. Montgomery*, 373 Ill. App. 3d 1104, 1118, 872 N.E.2d 403, 415 (2007), this court observed that trying felony cases before a jury "ain't beanbag." As we explained in *Montgomery*, felony criminal trials are serious matters with high stakes, and we expect advocates in our adversarial system of justice–both prosecutors and defense attorneys–to "use all of their forensic skills to persuade the jury of the wisdom or justice of their respective positions." *Id.* We continue to be disinclined to become the "speech police" by imposing

unnecessary restrictions upon closing arguments in criminal cases, and we encourage counsel to vigorously advocate for their position. Indeed, "trial courts and reviewing courts should step in only when it can truly be said that comments during closing arguments 'were so prejudicial that real justice was denied or that the verdict resulted from the error.' " *Id.* at 1119, 872 N.E.2d at 416 (quoting *People v. Perry*, 224 Ill. 2d 312, 347, 864 N.E.2d 196, 218 (2007)).

¶ 29    In this case, the prosecutor's remarks–which the trial court tempered by explaining to the jury that (1) "what the attorneys say in final argument is not evidence" and (2) it is "up to the jury to examine and determine whether or not the inference being asked to be drawn is appropriate or not"–were nothing more than vigorous arguments related to what the State believed the evidence presented at trial showed. Just as the jury is entitled to draw inferences from the evidence that are reasonable (*People v. Sorrels*, 389 Ill. App. 3d 547, 551, 906 N.E.2d 788, 792 (2009)), the attorneys–including the prosecutor–may argue those inferences. To the extent that the jury could reasonably infer certain facts, the prosecutor is justified in arguing them.

¶ 30    Here, the jury was free to infer that the cocaine, large amount of cash, and cellular telephone–which were all admitted into evidence–were indicative of defendant's intent to deliver the cocaine. Thus, the prosecutor was free to argue that inference in closing, just as the defense was free to–and did–argue for alternative inferences to be drawn, such as that (1) the police may have planted the cocaine on him; (2) he had a large amount of cash because he had just gotten paid or won a large sum of money at a casino; and (3) he was merely talking to a friend on the cellular telephone just before he was arrested.

¶ 31    As for defendant's claim that the prosecutor used the rules of evidence as a sword to attack the defense for the State's failure to present evidence from other witnesses, the context of that portion of closing arguments rebuts any notion that the prosecutor's comments were improper. In response to defendant's argument at closing that the arrest video showed more officers than the State called to testify, the prosecutor stated, as follows: "And on the video it looks like there were more than three or four. But we called three of them to testify. There was no need for us to call four, five, or six officers to testify redundantly or in a duplicative manner. In fact, there's usually an objection when it is done." Defendant's complaint about this last sentence is unpersuasive because, in context, it is clear that the prosecutor was simply pointing out that calling those other officers would have been duplicative or redundant. The prosecutor's comment was not an attack on defendant's failure to object or present evidence, but was additional support for the prosecutor's explanation for why he did not call every single police officer that was at the scene of defendant's arrest.

¶ 32    Accordingly, we reject defendant's arguments related to the prosecutor's remarks during opening statements and closing arguments. Because we conclude that defendant's arguments in that regard are meritless, we also reject any notion that he was denied the effective assistance of counsel when OSAD failed to present those arguments on direct appeal. Given that these same arguments were the basis for defendant's postconviction petition, we conclude that the trial court did not err by dismissing defendant's petition as frivolous and patently without merit.

¶ 33                              III. CONCLUSION

¶ 34        For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we
       award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 35        Affirmed.