NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200318-U

NO. 4-20-0318

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 7, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| JEREMY L. THOMASON, | ) | No. 12CF586 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Derek J. Girton, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justice Harris concurred in the judgment.
Justice Steigmann dissented.

**ORDER**

¶ 1     *Held*: The circuit court erred by dismissing defendant's *pro se* postconviction petition at the first stage of the proceedings.

¶ 2     Defendant, Jeremy L. Thomason, appeals the March 23, 2020, order of the Vermilion County circuit court, summarily denying his *pro se* postconviction petition as frivolous and patently without merit. Defendant contends the circuit court's denial was erroneous because the petition stated the gist of a constitutional claim for ineffective assistance of counsel based on trial counsel's advice to reject the State's 15-year plea offer. We reverse and remand with directions.

¶ 3                              I. BACKGROUND

¶ 4     In December 2012, the State filed six charges against both defendant and his codefendant, Albert I.P. Britt, related to an incident occurring on or about December 12, 2012.

Count I alleged the men committed armed robbery (720 ILCS 5/18-2(a)(1) (West 2012)), by taking the debit card of Raymond Steward by the use of force or by threatening the imminent use of force while armed with a dangerous weapon other than a firearm. Count II asserted the men committed aggravated robbery (720 ILCS 5/18-5(a) (West 2010)) by taking property from Candice Steele by threatening the imminent use of force while indicating verbally or by actions they were presently armed with a dangerous weapon. Count III alleged the men committed unlawful restraint (720 ILCS 5/10-3(a) (West 2012)) by detaining Fred Mills without legal authority. Counts IV and V alleged the men committed battery (720 ILCS 5/12-3(a)(1), (a)(2) (West 2012)) against Steele. The sixth count alleged the men committed aggravated battery (720 ILCS 5/12-3.05(a)(1) (West Supp. 2011)) against Steward.

¶ 5        At an April 2013 hearing, defendant's counsel noted Britt had agreed to plead guilty to one of the counts and, in return, Britt would testify against defendant. Based on that development, defense counsel requested a continuance of defendant's trial. The circuit court granted the continuance, but it initially stated, "Is that really a shocking development?" After a June 2013 trial, a jury found defendant guilty of armed robbery and aggravated battery but not guilty of the other four charges. The evidence presented at defendant's trial is set forth in our prior decision. See *People v. Thomason*, 2018 IL App (4th) 130875-UB. At an August 2013 hearing, the circuit court sentenced defendant to concurrent prison terms of 30 years for armed robbery and 5 years for aggravated battery.

¶ 6        On appeal, defendant asserted (1) he did not receive effective assistance of counsel because counsel failed to seek to exclude defendant's prior convictions as impeachment evidence and (2) his 30-year sentence for armed robbery was excessive. Initially, this court declined to address defendant's ineffective assistance of counsel claim, finding the claim was

better suited for postconviction proceedings where a complete record could be developed. Defendant filed a petition for leave to appeal to the Illinois Supreme Court, and the supreme court denied defendant's petition. However, in doing so, the supreme court vacated our initial judgment and directed us to consider whether defendant's ineffective assistance of counsel claim could be properly considered on direct appeal in light of *People v. Veach*, 2017 IL 120649, 89 N.E.3d 366, and determine if a different result was warranted. *People v. Thomason*, No. 120598 (Ill. Sept. 27, 2017) (nonprecedential supervisory order on denial of petition for leave to appeal). This court did so and affirmed defendant's convictions and sentences. *Thomason*, 2018 IL App (4th) 130875-UB, ¶ 2.

¶ 7        On March 23, 2020, defendant filed his *pro se* petition under the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq*. (West 2020)). The petition asserted he received ineffective assistance of counsel because trial counsel (1) advised defendant to reject the State's 15-year plea offer and (2) failed to tender a jury instruction scrutinizing the testimony of two witnesses who were known narcotic addicts. He further contended his appellate counsel was ineffective for failing to raise the aforementioned arguments on direct appeal. Defendant attached his affidavit and a copy of e-mails between trial counsel and an assistant state's attorney. Trial counsel's e-mail was dated February 26, 2013, and asked for a plea offer in this case. Trial counsel suggested a plea to the aggravated battery count and noted defendant was extended term eligible. The prosecutor's e-mail was dated March 25, 2013, and stated defendant could plead guilty to the armed robbery charge with a 15-year sentence "(finding of GBH=85%)" and admit to a probation violation in a separate case with a concurrent 4-year sentence.

¶ 8        On the same day the postconviction petition was filed, the circuit court entered a written order denying defendant's postconviction petition. On April 21, 2020, defendant mailed

to the circuit clerk his motion to reconsider the circuit court's judgment, and the circuit court denied the motion to reconsider on June 8, 2020.

¶ 9      On July 7, 2020, defendant mailed his *pro se* notice of appeal, which sufficiently complied with Illinois Supreme Court Rule 606 (eff. July 1, 2017). See Ill. S. Ct. R. 651(d) (eff. July 1, 2017) (providing the supreme court rules governing criminal appeals apply to appeals in postconviction proceedings). The circuit clerk filed the notice of appeal on July 10. The notice of appeal is considered timely filed under Illinois Supreme Court Rules 612(b)(18), 373, and 12(b)(6) (eff. July 1, 2017). Thus, this court has jurisdiction under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 10                                      II. ANALYSIS

¶ 11      The Postconviction Act "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1074-75 (2010). A proceeding under the Postconviction Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. English*, 2013 IL 112890, ¶ 21, 987 N.E.2d 371. The defendant must show he or she suffered a substantial deprivation of his or her federal or state constitutional rights. *People v. Caballero*, 228 Ill. 2d 79, 83, 885 N.E.2d 1044, 1046 (2008).

¶ 12      The Postconviction Act establishes a three-stage process for adjudicating a postconviction petition. *English*, 2013 IL 112890, ¶ 23. Here, defendant's petition was dismissed at the first stage. At the first stage, the circuit court must review the postconviction petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020). To survive dismissal at this initial stage, the postconviction

petition "need only present the gist of a constitutional claim," which is "a low threshold" that requires the petition to contain only "a limited amount of detail." *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996). Our supreme court has held "a *pro se* petition seeking postconviction relief under the [Postconviction] Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209 (2009). A petition lacks an arguable legal basis when it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16, 912 N.E.2d at 1212. A petition lacks an arguable factual basis when it is based on a fanciful factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Hodges*, 234 Ill. 2d at 16-17, 912 N.E.2d at 1212. "In considering a petition pursuant to [section 122-2.1 of the Postconviction Act], the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding." 725 ILCS 5/122-2.1(c) (West 2020); see also *People v. Brown*, 236 Ill. 2d 175, 184, 923 N.E.2d 748, 754 (2010). Our review of the first-stage dismissal of a postconviction petition is *de novo*. *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 20, 963 N.E.2d 394.

¶ 13    Here, defendant asserts he raised the gist of a constitutional claim of ineffective assistance of trial counsel based on trial counsel's advice to not accept the State's plea offer. This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient

performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

¶ 14    Regarding plea negotiations, " '[a] criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' (Emphasis in original.) This right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial." *People v. Hale*, 2013 IL 113140, ¶ 16, 996 N.E.2d 607 (quoting *People v. Curry*, 178 Ill. 2d 509, 528, 687 N.E.2d 877, 887 (1997)).

¶ 15    In his affidavit, defendant stated he expressed an interest in accepting a plea offer, which is supported by trial counsel's e-mail seeking a plea offer from the prosecutor. When the State responded with an offer of 15 years' for armed robbery, defendant stated he was willing and ready to accept the 15-year offer. However, trial counsel advised him to reject the State's plea offer because the State's evidence was weak and the State could not prove its case of armed robbery against defendant beyond a reasonable doubt. He contended trial counsel erroneously led defendant to believe he could successfully present a viable reasonable doubt defense. According to defendant, such a defense had little chance of winning because defendant had

placed himself at the scene and admitted to striking Steward. The State asserts trial counsel's advice was not objectively unreasonable and noted trial counsel made arguments attacking the State's case. We find defendant's performance allegation is not completely contradicted by the record, and thus the argument has an arguable legal basis. While trial counsel had impeachment evidence to present in defendant's defense, the record does not show the State's evidence was weak. Steele was able to identify defendant; Steward testified both men demanded money; and Steele, Britt, and Steward all testified defendant hit Steward in trying to get Steward's pin number. We respectfully disagree with our learned, dissenting colleague's belief a defense counsel's legal opinion during plea negotiations can *never* give rise to an ineffective assistance of counsel claim. It is foreseeable the rendering of an irrefutably unreasonable opinion may support an ineffective assistance of counsel claim. Additionally, defendant's argument has an arguable factual basis as the record does not show the argument was baseless, fantastic, or delusional.

¶ 16　　　　Regarding prejudice in the context of a plea offer, the United States Supreme Court has held a defendant must show a reasonable probability of the following: (1) he or she would have accepted the plea offer but for counsel's deficient advice, (2) the plea would have been entered without the State canceling it, (3) the circuit court would have accepted the plea bargain, and (4) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); see also *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). In *Hale*, 2013 IL 113140, ¶ 20, our supreme court found *Frye* and *Cooper* "control and the factors set forth in those cases must now be relied upon in deciding if prejudice has been shown where a plea offer has lapsed or been rejected because of counsel's deficient performance."

¶ 17    In his postconviction petition, defendant alleged he would not have rejected the State's plea offer but for counsel's deficient advice and noted the 15-year disparity between the plea offer and his actual sentence. Trial counsel's e-mail seeking a plea offer from the State supports defendant's assertion he wanted to plead guilty under a plea agreement. The State argues the record shows defendant cannot prove prejudice because the State would have rescinded its plea offer when Britt accepted a plea offer and agreed to testify against defendant. In support of its argument, the State cites *People v. Vatamaniuc*, 2021 IL App (2d) 180379, 172 N.E.3d 629, which involved a direct appeal. There, the reviewing court concluded the defendant failed to establish prejudice because he did not identify anything in the record predating the expiration of the State's offer on October 21, 2013, and corroborating his naked assertion he would have timely accepted the State's offer but for his counsel's deficient performance. *Vatamaniuc*, 2021 IL App (2d) 180379, ¶ 82. However, in this case, the State's plea offer did not have an expiration date, and more than three weeks lapsed between the plea offer and the announcement Britt had entered into a plea agreement. Thus, in this case, supporting evidence does exist, indicating defendant would have accepted the plea offer before the State had a reason to rescind it. Additionally, the circuit court indicated Britt testifying against defendant was not a surprise, which would suggest the State might not have rescinded its offer. Regardless, this case is at the first stage of the postconviction proceedings, and the record does not completely refute a claim of prejudice. Accordingly, we find defendant's petition set forth an arguable legal and factual basis for defendant's assertion of prejudice. Thus, we reverse the circuit court's denial of defendant's postconviction petition and remand the cause to the circuit court for stage two proceedings. Our decision does not constitute any statement by this court regarding the merits of defendant's petition.

¶ 18                                    III. CONCLUSION

¶ 19            For the reasons stated, we reverse the Vermilion County circuit court's judgment

and remand the cause for further postconviction proceedings.

¶ 20            Reversed and remanded with directions.

¶ 21         JUSTICE STEIGMANN, dissenting:

¶ 22         As my distinguished colleagues in the majority correctly note, defendant claims on appeal that he raised the gist of a constitutional claim of ineffective assistance of counsel based on his trial counsel's advice not to accept the State's plea offer. *Supra* ¶ 13. Defendant essentially contends that this advice was based on trial counsel's erroneous assessment of the strength of the State's case—namely, that defendant should reject the State's plea offer because the State's evidence was weak and the State could not prove its case of armed robbery against defendant beyond a reasonable doubt. *Supra* ¶ 15. Because I strongly disagree that a defendant can base a claim of ineffective assistance of counsel upon his trial counsel's allegedly incorrect *opinion* regarding the strength of the State's case, I respectfully dissent.

¶ 23              I. TRIAL COUNSEL'S ALLEGEDLY INCORRECT *OPINION*

¶ 24         On page 15 of the Office of the State Appellate Defender's (OSAD) initial brief, OSAD faults trial counsel for having an incorrect *opinion*, characterizing the opinion as "incorrect legal advice" that is objectively unreasonable under *Lafler*. The majority appears to accept this characterization. However, trial counsel's statement, as set forth in defendant's affidavit, is that trial counsel told him, "I can win this case because the [S]tate would not be able to prove its case of armed robbery against [defendant] beyond a reasonable doubt." Later in that affidavit, defendant repeated that trial counsel "strongly advised against [accepting] the [S]tate's offer because [trial counsel] said the [S]tate would not be able to find him guilty of armed robbery beyond a reasonable doubt. Especially in a jury trial."

¶ 25         The majority's decision concludes that defendant's claims on appeal regarding his trial counsel are "not completely contradicted by the record" and thus have "an arguable legal basis." *Supra* ¶ 15. I disagree. Defendant's claim that his trial counsel had an incorrect *opinion*

regarding the strength of the State's case does not present an arguable legal basis for postconviction relief.

¶ 26　　　　The majority correctly states the law applicable to defendant's ineffective assistance claim: "A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer." (Emphasis in original.) *Supra* ¶ 14. So, how does having an allegedly *wrong opinion* about the strength of the State's case become *unreasonable*? And how many criminal defense attorneys, no matter how long they may have practiced, could pass the supposedly now-*constitutional* test of not being wrong in their assessment of the State's case against their clients?

¶ 27　　　　The majority also writes the following: "To satisfy the deficiency prong of *Strickland,* the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as 'counsel' guaranteed by the sixth amendment." *Supra* ¶ 14. Again, how is it possible that trial counsel's *opinion* in this case—that the State's evidence was weak and the State might not be able to prove armed robbery beyond a reasonable doubt—could be deemed a "performance so deficient that counsel was not functioning as 'counsel' "? Trial counsel may very well have been wrong in his opinion, but a trial counsel's being wrong in his evaluation of the State's case cannot—in my opinion—meet the above standards that come from *Strickland* and its progeny.

¶ 28　　　　And we should keep in mind that in this very case, defendant was tried on five felony counts and acquitted of three of them. That should suggest, at a minimum, that trial counsel's judgment about the strength of the State's case is worthy of at least a little respect.

¶ 29　　　　I am aware that at the first stage, a postconviction petition may be summarily dismissed as frivolous and patently without merit only if the petition is based on an indisputably

meritless legal theory. I think this situation meets that criterion. In my opinion, an ineffective assistance of counsel claim based, as here, on trial counsel's *opinion*, even if it were wrong, could never be anything other than an indisputably meritless legal theory.

¶ 30　　　　And we're not talking here about tricky legal concepts that a prisoner would need a lawyer to flesh out, requiring—out of fairness—that the postconviction petition should be advanced to the second stage with counsel appointed. Whether trial counsel *promised* defendant an acquittal after trial is something we can reasonably expect any prisoner to be able to communicate in his initial petition.

¶ 31　　　　Last, we should be mindful that probably 95% of felony cases are resolved by guilty pleas. That fact counsels that we should be very careful about adding any dubious considerations to the process—such as concluding that a trial counsel violates his client's sixth amendment rights if counsel expresses an opinion about the strength of the State's case with which a court of review (with 20/20 hindsight, of course) disagrees.

¶ 32　　　　I am not aware of any case holding, as this proposed Rule 23 order would, that a trial counsel's having the wrong *opinion* about the strength of the State's case and then advising his client based on that opinion to reject the State's plea offer could constitute ineffective assistance of counsel. The majority and OSAD cite no such case, and I am unwilling to be part of the first to so hold.

¶ 33　　　　I have difficulty envisioning any postconviction petition that would not pass muster at the first stage—according to the majority's analysis—in which a defendant (1) turned down the State's offer to plead guilty, (2) claims he did so because his trial counsel advised defendant that the State's case was weak, (3) contends his counsel's opinion about the strength of the State's case was wrong, and (4) claims that but for counsel's advice, he would have accepted

the State's offer to plead guilty. It should be remembered that almost no defendant ever goes to trial on a felony charge without some plea bargaining occurring between the parties. And surely, when discussing the plea offer with his client, counsel in every case will offer his opinion about the strength of the State's case. After the majority's decision in this case, Illinois courts can expect to be inundated with postconviction petitions claiming defense counsel had incorrect opinions about the strength of the State's case.

¶ 34                     II. OSAD'S MISREPRESENTATIONS ABOUT
                         DEFENDANT'S POSTCONVICTION PETITION

¶ 35         A troubling aspect of this case is that OSAD has made misrepresentations about the allegations in defendant's postconviction petition. On page 16 of OSAD's initial brief, OSAD cites *People v. McGee*, 2021 IL App (2d) 190040, ¶ 42, in which the Second District held that the trial court erred by dismissing the defendant's postconviction petition when that petition alleged that his trial counsel was ineffective for convincing the defendant to reject a plea offer "with the promise of an acquittal." In the next paragraph on page 16, OSAD describes trial counsel's conduct in this case as follows: "Advising [defendant] to reject the State's offer *** and *promising an acquittal* was the same error that made a substantial showing of a constitutional violation in *McGee*." (Emphasis added.)

¶ 36         In OSAD's reply brief, OSAD again contends that trial counsel did not merely *advise* defendant about the strength of the State's case but *promised* an acquittal. The second sentence on page one of the reply brief reads as follows: "[Defendant's postconviction] petition showed an arguably meritorious claim of ineffective assistance, because [defendant's] trial counsel convinced him to reject the State's plea offer and *promised* that [defendant] would be acquitted on the armed robbery count. (C. 224-26, 232-33)." (Emphasis added.)

¶ 37    This revised claim is not factually supported. I reviewed the cited pages from the common law record, which contained defendant's affidavit in support of his postconviction petition, and they contain no such averment nor anything remotely like a *promise* by trial counsel that defendant would be acquitted.

¶ 38    The following sentence from the middle paragraph of page two of the reply brief puts to rest any thought that this incorrect statement was somehow inadvertent: "Here, taking [defendant's] allegation—that his trial counsel *promised* an acquittal on the armed robbery count—as true, his petition certainly meets the lower threshold of an arguable basis of a constitutional violation." (Emphasis added.)

¶ 39    It need hardly be said that an attorney's *promising* an acquittal is vastly different than his expressing an opinion that the State's case is weak.

¶ 40    I have often commented that OSAD does a fine job representing the indigent clients it is appointed to represent. The misrepresentations I just cited are unworthy of OSAD's usual good work.